**Ramon J. RIOS, Plaintiff-Appellant,**

v.

**REYNOLDS METALS COMPANY, Defendant-Appellee.**

**No. 71-2681.**

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1972.

Michael P. O'Reilly, James De Anda, Edwards & De Anda, Corpus Christi, Tex., for appellant.

Julia P. Cooper, Chief, Appellate Section, Office of the Gen. Counsel, John de J. Pemberton, Jr., Acting Gen. Counsel., Charles L. Reischel, Atty., EEOC, Washington, D. C., amicus curiae.

William H. Keys, Keys, Russell, Watson & Seaman, Corpus Christi, Tex., for appellee.

Gerald Aksen, Gen. Counsel, American Arbitration Assn., New York City, amicus curiae.

Before BELL, DYER and CLARK, Circuit Judges.

BELL, Circuit Judge:

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e et seq. The Act provides a procedure whereby an aggrieved employee may obtain relief from injuries caused by discriminatory employment practices. This procedure culminates in a civil action by the employee where other measures fail. The question presented on this appeal is whether this judicial remedy is available to an employee who first submits his claim to arbitration under an anti-discrimination clause in a collective bargaining agreement between his employer and his union and receives an adverse arbitral determination of the issues he ultimately presents to the court under Title VII.

We touched on this question in a peripheral manner in a prior decision of this court. Hutchings v. United States Industries, Inc., 5 Cir., 1970, 428 F.2d 303. There we held that the doctrines of election of remedies and res judicata did not bar a subsequent suit under Title VII where the rights and remedies at issue in an arbitration proceeding differed from the rights and remedies at issue under Title VII. We left for the future ". . . the question whether a procedure similar to that adopted by the Labor Board in deferring to arbitration awards when certain standards are met might properly be adopted in Title VII cases." Id. at 314, n. 10. The more important fact in *Hutchings* was that the collective bargaining agreement and arbitral process did not expressly include the employer obligation under Title VII. There we said:

"In view of the dissimilarities between the contract grievance-arbitration process and the judicial process under Title VII, it would be fallacious to assume that an employee utilizing the grievance-arbitration machinery under the contract and also seeking a Title VII remedy in court is attempting to enforce a single right in two forums. We do not mean to imply that employer obligations having their origin in Title VII are not to be incorporated into the arbitral process. When possible they should be. See *generally* Gould, Labor Arbitration of Grievances Involving Racial Discrimination, 118 U.Pa.L.Rev. 40 (1969). But the arbitrator's determination under the contract has no effect upon the court's *power* to adjudicate a violation of Title VII rights."

Here the employer obligation in issue under Title VII is expressly included in

the arbitral process under the collective bargaining agreement.[1] We also have a prejudgment determination by an arbitrator of an issue which is the same issue as that which the employee subsequently presented to the district court.

In the case at bar the district court, 332 F.Supp. 1209, held that the arbitrator's determination of this issue barred the civil action under Title VII. For reasons to be stated, we reverse and remand for further proceedings.

## I.

Appellant Rios was employed at a plant operated by Reynolds Metals Company, appellee. Rios applied for a position as mechanic pipefitter, a position then vacant. After passing a written examination, he assumed the new post on a trial basis. About one month later he was demoted to his former position.

Pursuant to the provisions of the collective bargaining agreement between Reynolds and the Aluminum Workers International Union, Rios filed a grievance in which he claimed that he had not been given a reasonable trial period at his new assignment. Arbitration ensued. At the arbitration hearing, in response to questions raised by his union representative, Rios maintained that one reason for his demotion was that Reynolds had discriminated against him because he was a Mexican-American. The arbitrator rejected this contention and determined that Rios had been given fair treatment during the trial period. The arbitrator concluded that Rios was demoted because he was unable to perform the new job satisfactorily.

Rios initiated this action in the district court before the arbitration hearing was held. The arbitrator's decision followed and thereafter, in light of the decision of the arbitrator, Reynolds moved for summary judgment. Reynolds contended that Rios, having submitted to arbitration, was bound by the arbitrator's determination. The district court accepted this contention.

## II.

The settlement of labor disputes by arbitration is a favored national labor policy. *See*, e. g., Boys Markets,

1. GRIEVANCE PROCEDURE
   ARTICLE VI

   Section 1. It is agreed that any employee may present a grievance to the Company in matters pertaining to the application and interpretation of this agreement and it is agreed that such grievance will be processed in accordance with the procedure outlined herein.

   An employee who wishes to present a grievance shall first discuss this grievance with his immediate supervisor. The employee will, if he wishes, be accompanied by his Union representative. Failing to resolve such grievance, it may be reduced to writing and presented to the supervisor and answered by him.

   *   *   *   *   *

   Failing satisfactory adjustment, the Union shall take up the grievance with the Director of Labor Relations for further handling. The Director of Labor Relations shall give his answer within thirty (30) days from the time the matter is referred to him.

   Failing satisfactory adjustment by the Director of Labor Relations, the grievance may be submitted to arbitration by either party.

   In the event a single arbitrator cannot be selected by the parties, the Federal Mediation and Conciliation Service Director, by mutual request, shall be asked to submit a list from which the parties to the dispute shall select an arbitrator.

   If they fail to make a selection from the list, then the Director of said Service shall be asked to appoint an arbitrator outside the original list.

   The decision of the arbitrator shall be final and binding on all affected parties. Expenses of the arbitrator, including his fee, shall be paid equally by the Company and the Union.

   *   *   *   *   *

   NONDISCRIMINATION
   ARTICLE XXXVII

   Section 1. The Company and the Union agree not to discriminate against any employee because of race, color, creed, national origin, sex, or Union activity in all matters pertaining to hiring, wages, hours, and working conditions.

Inc. v. Retail Clerks Union, Local 770, 1970, 398 U.S. 235, 90 S.Ct. 1583, 26 L. Ed.2d 199; United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409; Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L. Ed.2d 972. For this reason, in developing principles that will govern the availability of judicial relief under Title VII, we must carefully assess the impact of judicial action upon the favored arbitral remedy.

The viability of arbitration depends on the willingness of courts to enforce the arbitrator's award without reopening issues resolved by him. Thus, in such cases, courts customarily defer to the arbitrator's determination. They restrict their inquiry to the single question whether, under the terms of the collective bargaining agreement, the arbitrator had power to decide the issues he decided. If he had such power, his decision is binding. See, e. g., United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 596, 80 S.Ct. 1358.

The question here is whether a similar approach should be followed when, in the first instance, the issues decided by the arbitrator are cognizable in the federal court by virtue of Title VII, which manifests a strong national policy against discriminatory employment practices. We conclude that the traditional approach to the arbitration process is not warranted in this context.

The remedy afforded by Title VII is supplemental. It exists apart from analogous remedies provided by contract or by federal or state law. Indeed, aggrieved employees may seek relief under Title VII without first invoking or exhausting available alternative legal or contractual remedies. See Caldwell v. National Brewing Company, 5 Cir., 1971, 443 F.2d 1044; King v. Georgia Power, 295 F.Supp. 943 (N.D. Ga. 1968).[2] In addition, we have said that even where an employee does pursue an alternative remedy in cases involving Title VII rights, the federal court is to be "the final arbiter." *Hutchings,* supra, 428 F.2d at 313.

It does not follow, however, that the policies of Title VII require that an employee who has submitted his claim to binding arbitration must always be given an opportunity to relitigate his claim in court. In some instances such a requirement would not comport with elementary notions of equity, for it would give the employee, but not the employer, a second chance to have the same issue resolved. More importantly, such a requirement would tend to frustrate the national policy favoring arbitration. An employer would have little incentive to agree to arbitrate under a system where only the employee, in the event of an adverse arbitral determination, would have an opportunity to relitigate the matter in court.

This, of course, assumes that the national policy favoring arbitration of labor disputes should include grievances concerning rights which are guaranteed by Title VII. As we have noted, the teaching of *Hutchings* is that they may be included in the grievance-arbitration process. But, as *Hutchings* holds, the determination in the arbitration process has no effect upon the power of the federal court to adjudicate a violation of rights under Title VII. The question thus becomes whether the courts may

---

2. This treatment of the supplemental remedy of Title VII is not unlike that given the supplemental remedy of 42 U.S.C.A. § 1983. See Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622; Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed. 2d 647; Wilwording v. Swenson, 1971, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418.

accommodate the national arbitration process policy to Title VII proceedings without thwarting the congressional intent in Title VII to eliminate discriminatory practices in employment. We conclude that the policy which favors arbitration and the remedial policy of Title VII may be accommodated by a procedure which was alluded to in *Hutchings* but saved for decision on another day. It is that a district court may, under limited circumstances, defer to a prior arbitration award.

The apparent analogy is to the deferral procedure followed by the National Labor Relations Board in the exercise of its discretionary powers under the National Labor Relations Act. See Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 1958, 257 F.2d 467, 473; Spielberg Manufacturing Co., 112 N.L.R.B. 1080 (1955).

As we recognized in Lodge No. 12, etc. v. Cameron Iron Works, supra, a prior arbitration award does not divest the NLRB of its statutory jurisdiction to effectuate the policies of the National Labor Relations Act. But we recognized as well that a given controversy may be cognizable both as an arbitrable grievance under a collective bargaining agreement, and as a labor dispute under the National Labor Relations Act. Where such a coincidence of issues exists, it is within the discretionary power of the NLRB to defer to findings made by the arbitrator.

In exercising this power, the NLRB has recognized the limits of its discretion and has develped minimum standards on which to structure the decision to defer *vel non*. In Spielberg Manufacturing Co., 112 N.L.R.B. at 1082, the Board stated that where "the proceedings appear to have been fair and regular, all parties have agreed to be bound, and the decision of the arbitration panel is not clearly repugnant to the purposes and policies of the Act," it is proper for the Board to defer to a prior arbitration award involving the same issues. This practice has been approved by the courts and reaffirmed by the NLRB as being consistent with national labor policy. See, e. g., Carey v. Westinghouse Elec. Corp., 1964, 375 U.S. 261, 270, n. 7, 84 S.Ct. 401, 11 L.Ed.2d 320. Lodge No. 12. etc. v. Cameron Iron Works, supra.

■■ We hold that the federal district court in the exercise of its power as the final arbiter under Title VII may follow a like procedure of deferral under the following limitations. First, there may be no deference to the decision of the arbitrator unless the contractual right coincides with rights under Title VII. Second, it must be plain that the arbitrator's decision is in no way violative of the private rights guaranteed by Title VII, nor of the public policy which inheres in Title VII. In addition, before deferring, the district court must be satisfied that (1) the factual issues before it are identical to those decided by the arbitrator; (2) the arbitrator had power under the collective agreement to decide the ultimate issue of discrimination; (3) the evidence presented at the arbitral hearing dealt adequately with all factual issues; (4) the arbitrator actually decided the factual issues presented to the court; (5) the arbitration proceeding was fair and regular and free of procedural infirmities. The burden of proof in establishing these conditions of limitation will be upon the respondent as distinguished from the claimant.

In essence, this procedure will amount to a review of the arbitration proceeding in cases involving Title VII rights. It is not as broad as the procedure followed in general grievance-arbitration cases where the court looks only to the question whether under the terms of the collective bargaining agreement the arbitrator had power to decide the issues he decided. *United Steelworkers*, supra, 363 U.S. at 596, 80 S.Ct. 1358. Neither is it as broad as the policy of deferral under res judicata principles which we have applied in cases where facts previously determined by the Labor Board are presented in collateral proceedings in the federal courts. Nix v. International Ass'n of Machinists and Aerospace Workers, 5 Cir., 1971, 452 F.2d

794; H. L. Robertson & Associates, Inc. v. Plumbers Local Union No. 519, 5 Cir., 1970, 429 F.2d 520; Painters District Council No. 38, Brotherhood of Painters, Decorators and Paperhangers v. Edgewood Contracting Co., 5 Cir., 1969, 416 F.2d 1081.[3]

Reversed and remanded for further proceedings not inconsistent herewith.

See also D.C., 328 F.Supp. 155.

3. It is to be observed that our holding may be somewhat in line with the result which has evolved in the Sixth Circuit in a series of cases beginning with Dewey v. Reynolds Metals Co., 6 Cir., 1970, 429 F.2d 324, aff'd without opinion by an equally divided court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971), and ending with Newman v. Avco Corp., 6 Cir., 1971, 451 F.2d 743. Under the Sixth Circuit's approach it now appears that a claimant who has received an adverse arbitration award must be permitted to relitigate his claim in court unless certain conditions are met. Thus, the arbitration proceeding must have been fair and impartial. The issue presented to the court under Title VII must be the same as the issue decided by the arbitrator under the collective bargaining agreement. The arbitrator must have had power, under the collective bargaining agreement, to decide the issues he decided. Newman v. Avco, supra. These conditions reproduce in part the minimum criteria for deferral, which we have set out.