## AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA AFL–CIO, LOCAL UNION 540, Plaintiff-Appellee,

v.

## GREAT WESTERN FOOD COMPANY, Defendant-Appellant.

No. 82–1207.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1983.

Rehearing and Rehearing En Banc Denied Sept. 29, 1983.

---

Before CLARK, Chief Judge, GOLD-BERG and POLITZ, Circuit Judges.

CLARK, Chief Judge:

Great Western Food Company discharged its employee, Joe C. Borden, after he wrecked the company's tractor-trailer rig. Borden contended that Great Western lacked the necessary just cause to discharge him. Pursuant to a collective bargaining agreement between Great Western and Borden's union, Amalgamated Meat Cutters, Local 540, the matter was submitted to binding arbitration. The arbitrator ordered that Borden be reinstated. When Great Western refused to comply with the award, the union sought enforcement in district court. The court enforced the award and granted the union reasonable attorneys' fees. Great Western appeals. We conclude that enforcement of the award would violate public policy. Accordingly, we reverse.

■ This court will not review the factual findings or merit determinations made in an arbitration award. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Bakery Workers, Local No. 370 v. Cotton Bros. Baking Co.*, 672 F.2d 562, 564 (5th Cir.1982). Therefore, the following factual statement is based exclusively on the arbitrator's written findings.

Borden was dispatched from Great Western's terminal in Fort Worth, Texas, for a trip to California. In route, the eighteen-wheel rig he was driving overturned. The Arizona Highway Patrol officer who arrived on the scene noted a strong smell of liquor on Borden's breath. The officer cited Borden for "drinking intoxicating liquor while on duty or within 4 hours prior" and for travelling at a "speed greater than reasonable and prudent." Borden admitted to the officer that he had taken a drink at his last preceding rest stop.

Despite these findings, the arbitrator ordered Great Western to reinstate Borden with full seniority. He did so because Great Western had failed to thoroughly investigate the cause of the accident. Specif-

Dennis M. Conrad, J. Shelby Sharpe, Fort Worth, Tex., for defendant-appellant.

Mullinax, Wells, Mauzy & Baab, Inc., G. William Baab, Dallas, Tex., for plaintiff-appellee.

ically, Great Western failed to disprove Borden's claim that a steering mechanism failure had caused the accident. The arbitrator, however, refused to award Borden any back pay. He wrote:

> Grievant admitted drinking intoxicating liquor shortly before the accident, and was apparently dividing his attention between his CB radio and driving. He is in a rugged business, demanding physical and mental toughness. He must stop drinking while on duty and must use his CB very sparingly, while sitting in an alert position. Otherwise his reinstatement will not last long.

■ Arbitration is generally favored as a matter of federal labor policy. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). "The validity of arbitration decisions depends on the willingness of courts to enforce the arbitrator's award without reopening issues resolved by him." *Rios v. Reynolds Metals Company,* 467 F.2d 54, 57 (5th Cir.1972). Therefore, our review of arbitration awards is quite limited. Enforcement of an arbitration award should be denied only if the dispute was not "arguably arbitrable," *International Association of Machinists v. Texas Steel,* 639 F.2d 279, 281 (5th Cir.1981), if the arbitral decision did not draw its essence from the collective bargaining agreement, *W.R. Grace & Co. v. Local 759, International Union of Rubber Workers,* —— U.S. ——, ——, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361), or if enforcement of the award by the court would violate public policy, *Sea-Land Service, Inc. v. International Longshoremen's Association of New York,* 625 F.2d 38, 42 (5th Cir.1980); *Johns-Manville Sales v. International Association of Machinists, Local 1609,* 621 F.2d 756, 757 (5th Cir.1980); *General Warehouseman & Helpers v. Standard Brands, Inc.,* 579 F.2d 1282, 1292 n. 8 (5th Cir.) (en banc). *Accord International Association of Machinists, District No. 8 v. Campbell Soup Company,* 406 F.2d 1223, 1225 (7th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969); *Local 453, International Union of Electrical Workers v. Otis Elevator Co.,* 314 F.2d 25, 29 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). *Cf. W.R. Grace & Co.,* —— U.S. at ——, 103 S.Ct. at 2182 (a court may not enforce a collective bargaining agreement that is contrary to public policy). A court should exercise extreme caution before declaring that an arbitral award violates public policy. *See* R. Gorman, Basic Text on Labor Law 593–98 (1976). *Cf. W.R. Grace & Co.,* —— U.S. at ——, 103 S.Ct. at 2182 (public policy necessary to prevent enforcement of a collective bargaining agreement must be "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945).").

■ In a nation where motorists practically live on the highways, no citation of authority is required to establish that an arbitration award ordering a company to reinstate an over-the-road truck driver caught drinking liquor on duty violates public policy. Alcohol impairs a person's coordination, and inhibits his ability to reason rationally. Ingestion of alcohol slows the reflexes. It induces drowsiness. It slows response time to external stimuli. It dulls the senses. In recognition of alcohol's undisputedly debilitating characteristics, every state in the union prohibits driving while under its influence. A driver who imbibes the spirits endangers not only his own life, but the health and safety of all other drivers. These considerations are convincing enough with respect to drivers of automobiles. They become even more compelling when the driver is regularly employed to course the highways in a massive tractor-trailer rig.

The public policy against allowing a professional driver to continue his driving duties after having been caught drinking on the job is also evidenced in the caselaw. In *National Labor Relations Board v. Dixie Motor Coach Corp.,* 128 F.2d 201 (5th Cir. 1942), a bus driver-employee was discharged for drinking on the job. Despite the employee's claim that he was discharged because of his union activities, we held that the reinstatement of such an employee to his former position would be contrary to the public welfare and to the purposes of the National Labor Relations Act. *Id.* at 203. We stated: "The public interest, as well as that of the employer, requires of any one entrusted with the lives and safety of the travelling public that he conduct himself in a manner in keeping with his responsibilities." *Id.* Accord *NLRB v. U.S. Truck Co.,* 124 F.2d 887, 889–90 (6th Cir.1942). *Cf. World Airways, Inc. v. International Brotherhood of Teamsters, Local 2707,* 578 F.2d 800 (9th Cir.1978) (pilot demoted because of judgment errors) [1]; *Texas Co. v. NLRB,* 120 F.2d 186, 187–88 (9th Cir.1941) (intoxicated seaman). Further evidence is found in the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 385.1 *et seq.* Section 392.5 provides:

(a) No person shall—

(1) Consume an intoxicating liquor, regardless of its alcoholic content, or be under the influence of an intoxicating liquor, within 4 hours before going on duty or operating, or having physical control of, a motor vehicle; or

(2) Consume an intoxicating liquor, regardless of its alcoholic content, or be under the influence of an intoxicating liquor, while on duty, or operating, or in physical control of, a motor vehicle; or

(3) Be on duty or operate a motor vehicle while he possesses an intoxicating liquor, regardless of its alcoholic content. . . .

(b) No motor carrier shall require or permit a driver to—

(1) Violate any provision of paragraph (a) of this section; or

(2) Be on duty or operate a motor vehicle if, by his general appearance or by his conduct or by other substantiating evidence, he appears to have consumed an intoxicating liquor within the preceding 4 hours.

Thus, the public policy of preventing people from drinking and driving is embodied in the case law, the applicable regulations, statutory law, and pure common sense. The policy is "well defined and definite." *W.R. Grace & Co.,* —— U.S. at ——, 103 S.Ct. at 2182. To enforce the arbitrator's award in this case, an award which compels the reinstatement to driving duties of a truck driver who admittedly drank while on duty, would violate this public policy. Therefore, the district court erred in enforcing the award.

 The district court also held that Great Western "unjustifiably refused" to abide by the arbitral award. Accordingly, it awarded the union $3,000.00 in attorneys' fees. A party to an arbitral award is not entitled to the attorneys' fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was "without justification." *Bell Production Engineers v. Bell Helicopter Textron,* 688 F.2d 997, 999 (5th Cir.1982); *Cotton Bros. Baking Co.* at 564. Our previous discussion with respect to the merits reveals that Great Western's refusal to comply with the award was not "without justification." Among other things, compliance could have subjected Great Western to liability under 49 C.F.R. § 392.5(b)(2). The court abused its discretion in granting the union its fees.

---

1. In *World Airways,* an aircraft Pilot-in-Command was permanently demoted to the position of co-pilot because he made repeated errors of judgment. The employee filed a grievance, and an arbitrator ordered *World Airways* to retrain the employee and give him an opportunity to requalify as a Pilot-in-Command. The district court refused to enforce this portion of the award, and the Ninth Circuit affirmed. The court relied in part on the "strong federal policy in ensuring the safety of air travel." *Id.* at 803. As in the case at bar, enforcement of the arbitral award would have created a serious potential danger to the health or lives of third persons—in that case, the airline passengers, in this case, other highway travellers.

Because the court erred in enforcing the arbitral award, and because it erred in awarding the Union its attorneys' fees, its judgment is in all respects reversed, and judgment is rendered here for Great Western.

REVERSED and RENDERED.